UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-163-FDW

| | |
|---|---|
| JAMES GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| GLENN BULLOCK, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Glenn Bullock, Jane Kahan, and Lawrence Parsons. (Doc. No. 21).

**I.    BACKGROUND**

　　A.    Procedural Background

Pro se Plaintiff James Graham is a prisoner of the State of North Carolina, currently incarcerated at Harnett Correctional Institution in Lillington, North Carolina. He is serving consecutive sentences totaling 26 years for three convictions for robbery with a dangerous weapon and one conviction for assault with a deadly weapon inflicting serious injury. Plaintiff filed this action on March 13, 2013, naming the following persons as Defendants: (1) Glenn Bullock, identified as a Unit Manager at Lanesboro Correctional Institution; (2) Lawrence Parsons, identified as the Assistant Superintendent for Custody/Operations III at Lanesboro; and (3) Jane Kahan, identified as a former Unit Manager and current Captain at Lanesboro. Plaintiff alleges that Defendants violated his First Amendment right to access the courts—specifically, his

1

right to pursue his litigation in a conditions-of-confinement action he filed in the Eastern District of North Carolina—by depriving him of paper and pens to draft legal papers while he was incarcerated at Lanesboro. On October 8, 2013, Defendants filed their Answer. (Doc. No. 14). On September 8, 2014, the Court entered a scheduling order by which dispositive motions were due on or before January 18, 2015. (Doc. No. 17). On February 23, 2015, after receiving an extension of time, Defendants filed the pending motion for summary judgment. (Doc. No. 21). On April 21, 2015, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 27). Plaintiff did not file a response to the summary judgment motion.[1]

  B.  <u>Factual Background</u>

  1.  The Summary Judgment Evidence

  a.  Plaintiff's Allegations

As noted, Plaintiff did not respond to the summary judgment motion, and the time to do so has passed. Therefore, the only materials presented by Plaintiff as to his claim are the allegations in his Complaint. Plaintiff alleges in the Complaint that he transferred to Lanesboro on April 10, 2011, and was housed on Anson Unit in "solitary confinement." (Doc. No. 1 at 4). Plaintiff further alleges that, at the time, he was involved as a plaintiff in "nonfrivolous litigation" challenging his conditions of confinement in an action filed in the Eastern District of North Carolina. (Id. at 4; 6). Plaintiff alleges that, upon his arrival at Lanesboro, he asked

---

[1] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claim. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claim.

Defendants on multiple occasions, both verbally and in writing, to provide him with writing materials for his legal matters, but that they did not do so. Specifically, Plaintiff alleges that he sent a request for information to Defendant Parsons, the Assistant Superintendent, to ask him how he should request writing materials. (Id. at 4). Plaintiff contends that Defendant Parsons responded in writing that he should submit a request for writing materials to his Unit Manager. (Id. at 5). Plaintiff alleges that he submitted written requests for writing materials to Defendant Bullock, the Unit Manager, eighteen times in the following four months, but that he was never given any. (Id.). Plaintiff alleges that, during this same period, he requested writing materials from Defendant Bullock verbally in person on eight occasions, but that, despite Bullock's repeated commitment to provide them, Plaintiff never received any. (Id.).

Plaintiff further alleges that on August 24, 2011, he received a memorandum notifying him that Defendant Bullock would no longer be serving as the Unit Manager for Anson Unit and that the new Unit Manager was Defendant Kahan. (Id. at 5). Plaintiff contends that he requested writing materials from Defendant Kahan twenty-one times over the course of the next six months but never received any. (Id.). He alleges that Defendant Kahan either did not respond to his requests or told him that there were not paper, pens, or envelopes available. (Id.). Plaintiff alleges that during June through November 2011 he also wrote nine letters to Defendant Parsons, asking him to provide Plaintiff with writing materials or to order Defendants Bullock and Kahan to do so. (Id. at 6). Plaintiff alleges that he never received any response to any of these letters, nor were any writing materials provided. (Id.). Plaintiff asserts that, as a direct result of the failure of Defendants to provide him with writing materials, he was unable to respond to a pending motion for summary judgment in his conditions-of-confinement case in the Eastern

District of North Carolina, and the motion was granted and the case dismissed.[2] (Id.). Plaintiff seeks "an injunction directing defendant Parsons to send a memo to Unit Managers on Solitary Confinement Units – Richmond and Anson – mandating that Indigent prisoners be given paper, pens, and envelopes to address legal matters upon request." (Id. at 4). He also seeks punitive and compensatory damages both in this action and in the conditions-of-confinement case that was dismissed. (Id.).

b.  Defendants' Summary Judgment Materials

In support of their summary judgment motion, Defendants have offered the following evidence:

Plaintiff was transferred to the Anson Unit (a high-security segregation unit) at Lanesboro on April 10, 2011. At that time, Plaintiff had pending a single, federal lawsuit regarding conditions of confinement at another facility, in Graham v. Keller, 10-CT-3144 (E.D.N.C.), filed in the Eastern District of North Carolina on August 3, 2010.[3] Plaintiff was transferred to Lanesboro on April 10, 2011. On April 15, 2011, Plaintiff filed with the Eastern District a notification of his change of address. (Id., Doc. No. 22). On April 20, 2011, Plaintiff

---

[2] Plaintiff has acknowledged in the Complaint that, per prison policy, every inmate received monthly thirty sheets of writing paper. (Doc. No. 1 at 6; see also Doc. No. 21-4 at ¶ 2: Amy Kahan Aff.). Although his Complaint is not clear on this point, it does not appear that Plaintiff is alleging that he did not receive that monthly allotment. Rather, he appears to contend that Defendants' alleged failure to provide him with additional writing supplies prevented his access to the court in his pending Eastern District case. (Doc. No. 1 at 6).

[3] In his grievance, Plaintiff refers to legal matters, plural, and to federal courts, plural. However, the Eastern District of North Carolina action was the only active federal case he was involved in during the period of which he complains. Of the three other cases identified, one was dismissed as frivolous before his transfer to Lanesboro (10-CT-3051 (E.D.N.C.)); one is the case at bar (13-CV-0163 (W.D.N.C.)); and one post-dates the filing of the case at bar (13-CT-3109 (E.D.N.C.)) and, thus, cannot form the basis for a constitutional violation here.

filed a second, identical notification of address change. (Id., Doc. No. 23). On August 12, 2011, Defendant Bullock was transferred to another unit and Defendant Kahan assumed the role of Plaintiff's Unit Manager. See (Doc. No. 21-4 at ¶ 2: Amy Kahan Aff.). October 10, 2011, the defendants in the Eastern District of North Carolina action filed their motion for summary judgment and supporting materials. (Graham v. Keller, 10-CT-3144 (E.D.N.C.), Doc. No. 32). On October 27, 2011, Plaintiff submitted a grievance complaining that Defendants Parsons and Bullock (but not Defendant Kahan) failed to provide him with "writing materials for legal matters." (Doc. No. 21-2 at 3: Def.'s Ex. B).

On December 21, 2011, Plaintiff's grievance was reviewed and considered resolved by the Inmate Grievance Review Board. (Id. at 1). On January 5, 2012, Plaintiff filed a motion for an extension of time in which to respond to the motion for summary judgment in the Eastern District action. (Graham v. Keller, 10-CT-3144 (E.D.N.C.), Doc. No. 35). On February 3, 2012, the Eastern District granted the motion, and gave Plaintiff until February 12, 2012, to respond to the pending summary judgment motion in that court. (Id., Doc. No. 36). On August 22, 2012, after seven months with no further communication from Plaintiff, the Eastern District court granted the defendants' motion for summary judgment and dismissed Plaintiff's action in that court. (Id., Doc. No. 37). According to Defendants, while the Eastern District case was pending and Plaintiff was incarcerated at Lanesboro, he filed only three filings with the federal court, consisting of three total sheets of paper. Defendants further note that, despite Plaintiff's knowledge of the procedure by which he could ask for an extension in the pleading schedule (as evidenced by his having requested and received one such extension), between January 5, 2012, and August 22, 2012—a period of over seven months—he failed to request any additional time to respond to the defendants' pending motion for summary judgment in the Eastern District

5

action or to explain why he could not do so.

On March 13, 2013, seven months later, Plaintiff filed his complaint in this action. Defendant Parsons was at the time the administrator at Lanesboro. (Doc. No. 21-3 at ¶ 1: Lawrence Parsons Aff.). He recalled that Plaintiff had, in fact, written him on more than one occasion to complain that he was not receiving paper and envelopes. (Id. at ¶ 2). As administrator, Parsons was aware that all inmates received such items monthly and that they could also receive additional supplies if needed. (Id.). Parsons referred the matter to the unit management staff with the instruction to accommodate Plaintiff's request and advise Plaintiff to come to them directly with further requests. (Id.). Parsons asserts that Defendants Bullock and Kahan advised Parsons that the requested items had been provided to Plaintiff. (Id. at ¶¶ 2; 3).

Defendant Bullock was Plaintiff's Unit Manager at Anson Unit for four months, from Plaintiff's arrival in April 2011 until Bullock's transfer in August 2011. (Doc. No. 21-5 at ¶ 2: Glen Bullock Aff.). Pursuant to Lanesboro standard operating procedures, inmates were issued ten envelopes and thirty sheets of writing paper every month. (Id. at ¶ 4). In addition, inmates could receive unlimited extra paper and envelopes for legal correspondence. (Id.). Like Defendant Parsons, Defendant Bullock recalls that Plaintiff submitted multiple requests for paper and envelopes for legal work. (Id. at ¶ 3). Bullock made sure Plaintiff received whatever he needed and does not recall that Plaintiff ever complained that he had not received the supplies he had requested. (Id.).

After Defendant Bullock transferred to another unit in August 2011, Defendant Kahan became Plaintiff's Unit Manager. (Doc. No. 21-4 at ¶ 1: Kahan Aff.). Defendant Kahan understood that standard procedure was for writing supplies to be issued to the inmates on a monthly basis. (Id. at ¶ 2). In her experience, the unit management staff made sure these

supplies were received from the warehouse and, for inmates in segregation, night-shift sergeants made sure they were distributed during mail call. (Id.). Writing supplies were basically issued on request and the requests were so routine that staff did not generally question or track the distribution of such supplies. (Id.). Defendant Kahan asserts that she always accommodated inmate requests for additional writing supplies, even on occasion delivering such supplies to inmates herself. (Id. at ¶ 3). If her unit did not have writing supplies on hand she would always borrow requested supplies from other units or request additional supplies from the warehouse. (Id.). Defendant Kahan states that Plaintiff never expressed to Defendant Kahan any concern regarding not receiving requested supplies, and, in fact, she never had any issue of any kind with him. (Id. at ¶ 4).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Exhaustion As to Defendant Kahan and As to Any Wrongful Conduct Occurring after August 11, 2011

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

8

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

Defendants contend on summary judgment, and the Court agrees, that Plaintiff has failed to exhaust his administrative remedies with regard to Defendant Kahan and that Plaintiff has also failed to exhaust his administrative remedies for any allegedly wrongful action by any Defendant occurring after August 11, 2011, the last date complained of in the only grievance he filed regarding writing materials. Plaintiff alleges in the Complaint that Defendant Kahan failed to provide him with writing materials for legal matters on multiple occasions between August 2011 and February 2012. (Doc. No. 1 at 5). However, when in October 2011 Plaintiff grieved the failure to provide him with writing supplies, he did not mention Kahan or assert that she had on any occasion failed to provide him with writing materials. To the contrary, his extremely specific grievance covered only alleged instances of wrongful withholding through August 11, 2011. It is true that an inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court no longer mandates dismissal pursuant to § 1997e(a). See Jones v. Bock, 549 U.S. 199 (2007). However, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that

defendant, dismissal of that defendant is appropriate.  See Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004).  As Defendants note, ironically, if Plaintiff's grievance were less specific—that is, if it alluded only to omissions by collective or unnamed staff, for example—it could be read to include Defendant Kahan, or to include instances after August 11, 2011.  However, Plaintiff's grievance specifies not only the individuals whom he alleges withheld writing supplies from him (Defendants Parsons and Bullock), but also each and every instance of such withholding, up to and including August 11, 2011.  The grievance, therefore, cannot reasonably be read to extend to the alleged actions or inactions of Defendant Kahan.

Similarly, Plaintiff's October 2011 grievance cannot serve to exhaust his administrative remedies for any incident of alleged failure to provide him with writing supplies that occurred after the last incident complained of, which he alleged occurred on August 11, 2011.  While NCDPS policy prohibits inmates from filing multiple grievances regarding the same or similar conduct at the same time, there was nothing to prevent Plaintiff from filing a second grievance upon the final dismissal of his first one.  His grievance was deemed resolved by the Inmate Grievance Review Board on December 21, 2011.  (Doc. No. 21-2).  Although Plaintiff alleges multiple instances after August 11, 2011, during which he alleges that Defendant Kahan or Defendant Parsons withheld writing supplies from him, he failed to grieve any of these instances.  Again, Plaintiff's careful listing of each and every instance of allegedly wrongful conduct means that his grievance cannot reasonably be read to include any incident not specifically set forth.  It similarly follows that it cannot include any instance that occurred after the date the grievance was submitted.

In sum, because Plaintiff failed to grieve any instance of allegedly unconstitutional conduct that he alleges occurred at any time after August 11, 2011, and because he failed to

grieve any instance of allegedly unconstitutional conduct that he now seeks to attribute to Defendant Kahan, Plaintiff's claims against Kahan, and his implicit claim for continuing injury after August 2011 must be dismissed for failure to exhaust administrative remedies.[4]

    B. <u>Plaintiff's Claim for Denial of Access to the Courts</u>

Next, as to the merits of his claim for denial of access to the courts, the Court first notes that Plaintiff has sued Defendants Bullock and Kahan in their individual capacities but he has sued Defendant Parsons in both his individual and his official capacities. To the extent Plaintiff has sued Defendant Parsons in his official capacity, an action against a defendant in his official capacity is a suit against the State of North Carolina. <u>See</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). State officials sued in their official capacity for anything except prospective injunctive relief are not "persons" under Section 1983 and are immune from suit under the Eleventh Amendment. <u>Id.</u> Moreover, as relief, Plaintiff seeks "an injunction ordering Defendant Parsons to send a memo to unit managers on solitary confinement units, Richmond and Anson, mandating that indigent prisoners be given paper, pens, and envelopes to address legal matters upon request." Plaintiff's plea for injunctive relief is moot because he is no longer incarcerated at Lanesboro.[5] <u>See</u> <u>Incumaa v. Ozmint</u>, 507 F.3d 281, 286-87 (4th Cir. 2007).

    The Court next finds that Plaintiff cannot show that Defendants Parsons and Bullock

---

[4] The Court further finds that, in any event, even if Plaintiff exhausted his administrative remedies as to Defendant Kahan and instances occurring after August 2011, the Court would nevertheless dismiss on the merits Plaintiff's claim against Defendant Kahan and any claim of denial of access to the courts based on acts occurring after August 2011 for the same reasons the Court is dismissing Plaintiff's claim against Defendants Bullock and Parsons on the merits.

[5] Moreover, according to Defendants, the relief Plaintiff seeks is already in place because Lanesboro already provides that indigent inmates may receive writing supplies to address legal matters upon request.

violated his constitutional right to access the courts. It is well established that prisoners have the right of access to the courts, which includes access to writing materials. See Bounds v. Smith, 430 U.S. 817, 824-25 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Plaintiff has failed to raise a genuine issue of fact as to whether Defendants violated his First Amendment right to access to the courts. First, the uniform testimony of Defendants, which Plaintiff has not even attempted to rebut, is that Plaintiff was provided writing materials when he requested them. Here, all three Defendants have unequivocally testified that writing supplies such as those sought by Plaintiff were freely provided on the Anson Unit, without question and without formal tracking. While conceding that Plaintiff did, in fact, complain of needing such supplies on more than one occasion, Defendants uniformly assert in their sworn affidavits that Plaintiff's requests were attended to and fulfilled.

Furthermore, Plaintiff has not raised a genuine issue of material fact as to whether Defendants in any way impeded Plaintiff's ability to pursue his litigation in the Eastern District of North Carolina action. In his complaint, Plaintiff recites each and every instance in which he alleges that Defendants failed to provide him with additional writing materials over and above

12

his monthly allotment. However, a careful reading of his recitation of dates reveals that: (1) the last time he asserts Defendant Bullock refused him writing materials was August 11, 2011 (Doc. No. 1 at 5); (2) the last time he asserts that Defendant Parsons constructively refused him writing materials was November 6, 2011, (id. at 6); and (3) the last time he asserts that Defendant Kahan deprived him of writing materials was February 12, 2012, (id. at 5). However, Plaintiff asked the Eastern District court for an extension of time in which to respond to summary judgment in that action on January 5, 2012. This motion was granted and Plaintiff was given until February 24, 2012, to respond to the pending dispositive motion. Thereafter, Plaintiff filed nothing further— nothing with the Eastern District seeking more time or explaining a continuing lack of materials; nothing with the facility in the form of a grievance asserting that Defendant Kahan was not providing him with materials or that the problem continued unabated from the previous August; and, apparently, no further complaints to anyone in order to assert that his access to the courts continued to be impeded. The uncontroverted record establishes that Plaintiff only complained of difficulty accessing writing supplies from April 2011 through August 2011. In other words, Plaintiff has presented no evidence whatsoever raising an issue of fact as to whether Defendants' conduct was the reason for Plaintiff's failure to respond to a motion for summary judgment that was filed in October 2011 and not granted until August 2012 in the Eastern District action. In sum, Plaintiff has failed to raise a genuine issue of fact as to whether Defendants violated his First Amendment right to access to the courts, and Defendants are entitled to summary judgment.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 21), is **GRANTED**, and this action is dismissed with prejudice.

13

2. The Clerk is directed to terminate this action.

Signed: Frank D. Whitney
Chief United States District Judge